1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JACOB S. SILVERMAN,

    Plaintiff,

    v.

NAPA STATE HOSPITAL, et al.,

    Defendants.

Case No. 18-07620 BLF (PR)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

(Docket No. 25)

Plaintiff, a California inmate, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, against the Napa State Hospital, also referred to as the California Department of State Hospitals – Napa ("DSH-Napa"), for unsanitary conditions.  Dkt. No. 8.  After several dismissals with leave to amend, Plaintiff filed an amendment naming two individuals as defendants: Supervisors Erin Sherman[1] and Ken Maifeld.[2]  Dkt. No. 12.

---

[1] When Plaintiff failed to provide an address where Defendant Sherman could be served, the Court dismissed the claims against this defendant under Rule 4(m) of the Federal Rules of Civil Procedure and terminated him from the action.  Dkt. No. 26.

[2] Plaintiff identified this Defendant as Ken "Maiseld," Dkt. No. 12, but Defendant's responsive filings indicate that the correct spelling of his name is "Maifeld."  *See* Dkt. Nos. 18, 21, 25.

United States District Court
Northern District of California

1    Defendant Maifeld has filed a motion for summary judgement on the ground that the

2    undisputed material facts establish he did not act with deliberate indifference towards

3    Plaintiff.[3]  Dkt. No. 25.  Plaintiff was given an opportunity and ample time to file an

4    opposition, but has had no further communication with the Court since filing the

5    amendment in November 2019.  Dkt. No. 12.  Defendant filed notice of Plaintiff's failure

6    to file an opposition in the time provided, asserting it should be deemed consent to the

7    motion.  Dkt. No. 27.

8           For the reasons discussed below, Defendant's motion for summary judgment is

9    **GRANTED**.

10

11                                        **DISCUSSION**

12   **I.**     <u>**Statement of Facts**</u>[4]

13          This action is based on Plaintiff's allegations regarding unsanitary conditions he

14   experienced while at DSH-Napa from August 7 through 28, 2018.  Dkt. No. 8 at 1.  It

15   appears that he was involuntarily committed as a patient to DSH-Napa during that time.

16   According to Plaintiff's allegations in the amended complaint, there was urine and/or fecal

17   matter on the bathroom toilets, floors, and showers which were cleaned only once a

18   morning on the weekdays.  *Id.*  He claims he was not provided proper disinfectants to clean

19   the bathrooms himself.  *Id.* at 1-2.  Plaintiff claims that these "gross conditions" meant that

20   germs were being transferred throughout the hospital, as patients were touching telephones

21   and chairs in common areas.  *Id.* at 2.  Plaintiff seeks damages and injunctive relief.  *Id.* at

22   3.  Defendant Ken Maifeld was named as one of the supervisors who is liable for these

23   unsanitary conditions.  Dkt. No. 12 at 1.  Based on Plaintiff's allegations, the Court

24   liberally construed the complaint as stating a cognizable claim against Defendants for

25   _____

26   [3] In support of the motion, Defendant submits the declaration of Defendant Ken Maifeld accompanied by supporting exhibits.  Dkt. No. 25-2.

27   [4] Because no opposition has been filed, the Court accepts Defendant's statement of facts.

28                                            2

1   unsanitary conditions at DSH-Napa.  Dkt. No. 13 at 3.

2       Defendant Maifeld is employed at DSH-Napa as a Unit Supervisor.  In August

3   2018, he was a Senior Psychiatric Technician and was the morning shift lead for Unit Q9

4   where Plaintiff was housed at the time.  Defendant's responsibilities as morning shift lead

5   included supervising patient behavioral and nursing care, facilitating daily patient

6   activities, and working to maintain the safety and security of the hospital environment.

7   Maifeld Decl. ¶ 1, Dkt. No. 25-2 at 1-3.

8       Unit Q9 holds fifty patients, with approximately twenty-five patients in hallway B

9   and twenty-five patients in hallway D.  Maifeld Decl. ¶ 3.  Two bathrooms are available

10  for all Q9 patients to use, with three/four toilet stalls and two/three showers in each

11  bathroom.  *Id.*  A housekeeping staff member cleans the Unit Q9 bathrooms every

12  morning.  *Id*. ¶ 4.  When doing rounds, staff check the bathrooms for cleanliness and safety

13  hazards.  *Id.*  If the bathroom needs attending, the staff will clean it at this time.  *Id.*

14  Patients can also report to staff at any time when the bathroom needs to be cleaned.  *Id.*

15      The "Q9 Daily Logs" are initialed by staff every hour to show that door checks and

16  environmental rounds, including an inspection of the bathrooms, are performed.  *Id.* ¶ 5.

17  The Q9 Daily Logs show that from August 7 through August 28, 2018, nursing staff

18  conducted door checks and environmental rounds in Unit Q9 every hour.  *Id.*; Dkt. No. 25-

19  2 at 5-26 (Exh. 1).  The unit logs also show that no nursing staff reported any

20  environmental or health hazards in the bathrooms of Unit Q9 during the time that Plaintiff

21  was housed in the unit.  *Id.*

22      Defendant Maifeld worked in Unit Q9 on August 10, 11, 15, 16, 19, 20, 21, 22, 23,

23  26, 27, and 28, 2018.  Maifeld Decl. ¶ 6.  On those dates, he performed morning hourly

24  door checks and environmental rounds in Unit Q9, initialing the Q9 Daily Logs after

25  completing the hourly rounds.  *Id.*  During those dates, Defendant Maifeld did not observe

26  any of the Q9 bathrooms to be in a prolonged dirty condition, nor was he informed by

27  anyone that the Q9 bathrooms were dirty or unsanitary.  *Id.* ¶ 8.

28                                          3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Furthermore, the Department of State Hospitals does not allow patients at DSH-Napa to be in possession of cleaning chemicals, including ammonia.  Maifeld Decl. ¶ 9. This prohibition is listed on the DSH Statewide Property Contraband List, which was in effect during August 2018, when Plaintiff was a patient at DSH-Napa.  *Id.*; Dkt. No. 25-2 at 28 (Exh. 2).  Even if Plaintiff had made a request for cleaning products as he claims, the DSH-Napa policy would have prohibited Plaintiff from having them in his possession. Maifeld Decl. ¶ 10.

**II.   <u>Summary Judgment</u>**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may

4

be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id*.

### A.   Unsanitary Conditions

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). Under the Due Process Clause of the Fourteenth Amendment, civilly-committed persons retain substantive liberty interests, which include at least the right to basic necessities such as adequate food, shelter, clothing and medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint. *Id*. at 315-16.

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1085 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634

United States District Court
Northern District of California

1    (9th Cir. 1988).  A person deprives another of a constitutional right within the meaning of

2    section 1983 if he does an affirmative act, participates in another's affirmative act or omits

3    to perform an act which he is legally required to do, that causes the deprivation of which

4    the plaintiff complains.  *See Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d

5    1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent 8th Amendment

6    violation may be basis for liability).

7           Defendant asserts that based on the undisputed evidence, Plaintiff cannot establish

8    that Defendant Maifeld caused him to suffer the deprivation of a federal protected right

9    because he cannot show that the Unit Q9 bathrooms were in inhumane conditions.  Dkt.

10   No. 25 at 6-7.  Plaintiff has filed no opposition in response.  However, his amended

11   complaint is verified and therefore may be treated as an opposing affidavit.[5]  Dkt. No. 8 at

12   3; Dkt. No. 12 at 2.

13          Viewing the evidence in the light most favorable to Plaintiff, the Court finds that

14   there is no genuine dispute as to any material fact relating to Plaintiff's claim of unsanitary

15   conditions against Defendant Maifeld.  Plaintiff claims that the bathrooms and showers at

16   DSH-Napa were unsanitary during the 21 days of his commitment in August 2018.  It is

17   undisputed that he was housed in Unit Q9.  Defendant Maifeld attests that he was working

18   in Unit Q9 on 12 of the relevant days, and that he did not observe, nor was he informed by

19   others, that any of the Q9 bathrooms were dirty or unsanitary.  *See supra* at 3-4.  Even if it

20   were true that the bathrooms were dirty on the days that Defendant Maifeld was *not*

21   working in Unit Q9 as Plaintiff alleges, there is no evidence that Defendant Maifeld both

---

[5] A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   actually and proximately caused those conditions.  Contrary to Plaintiff's claim, the

2   undisputed evidence submitted by Defendant Maifeld shows that rounds of Unit Q9 were

3   conducted every hour, and that no nursing staff reported any environmental or health

4   hazards in the bathrooms of Q9 during the relevant time period as indicated by the Daily

5   Logs.  *See supra* at 3.  Defendant Maifeld attests that the Q9 bathrooms can get dirty and

6   require cleaning multiple times a day, and that whenever the bathrooms are dirty, the

7   nursing staff or housekeeper would clean them.  Maifeld Decl. ¶ 8.  He also attests that he

8   was not aware of Plaintiff making any complaints regarding the condition of the

9   bathrooms.  *Id*.  Defendant states that had he been so informed, he would have taken steps

10  to ensure that the bathrooms were promptly cleaned.  *Id.* ¶ 8.  Lastly, the undisputed

11  evidence shows that any failure to provide Plaintiff with cleaning products was a result of

12  the DSH-Napa policy prohibiting patients from possessing harmful chemicals and does not

13  amount to the denial of basic necessities.  Accordingly, the undisputed evidence shows that

14  the bathrooms were not in an unsanitary condition during the time alleged by Plaintiff, and

15  that Defendant Maifeld was not aware of any inhumane conditions and failed to act.  *See*

16  *Leer*, 844 F.2d at 633.  Therefore, Defendant has met his initial burden of demonstrating

17  the absence of a genuine issue of material fact with respect to the Fourteenth Amendment

18  claim against him.  *See Celotex Corp.*, 477 U.S. at 323.

19      The burden then shifts to Plaintiff to designate specific facts showing that there is a

20  genuine issue for trial.  *Id.* at 324.  He must do so by going "beyond the pleadings and by

21  [his] own affidavits, or by the 'depositions, answers to interrogatories, and admission on

22  file." *Id.*  Plaintiff has failed to do so, having filed no opposition to Defendant's motion.

23  Furthermore, Plaintiff makes no specific allegation in the amended complaint or

24  amendment that Defendant Maifeld had personal knowledge of the dirty conditions to

25  indicate that there exists a genuine issue of material fact.  Dkt. Nos. 8, 12.

26      Based on the evidence presented, Defendant has shown that there is no genuine

27  issue of material fact with respect to Plaintiff's claim of inhumane conditions at DSH-

28

1   Napa. *See Celotex Corp*., 477 U.S. at 323. Plaintiff filed no opposition and therefore has

2   failed to point to specific facts showing that there is a genuine issue for trial, *id*. at 324, or

3   identify with reasonable particularity the evidence that precludes summary judgment,

4   *Keenan*, 91 F.3d at 1279. Accordingly, Defendant Maifeld is entitled to judgment as a

5   matter of law on the claim against him. *Id*.; *Celotex Corp*., 477 U.S. at 323.

6

7                                    **CONCLUSION**

8          For the reasons stated above, Defendant Ken Maifeld's motion for summary

9   judgment is **GRANTED**. Dkt. No. 25. The Fourteenth Amendment claim against him is

10  **DISMISSED** with prejudice.

11         This order terminates Docket No. 25.

12         **IT IS SO ORDERED.**

13  Dated:  __June 14, 2021_____

14                                                        BETH LABSON FREEMAN
                                                          United States District Judge
15

16

17

18

19

20

21

22

23

24

25  Order Granting MSJ
    PRO-SE\BLF\CR.18\07620Silverman_grant-MSJ

26

27

28                                              8

United States District Court
Northern District of California